# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:21-cv-00030-MR

| | |
|---|---|
| BRANDON PICKENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| STEVEN HENDRICKS, et al., | )     **ORDER** |
| | ) |
| Defendants. | ) |
| _____ | ) |

**THIS MATTER** is before the Court on the Plaintiff's pro se Letters [Docs. 52, 66, 67, 68, 70], Motions for Relief from Judgment or Order [Docs. 62, 69, 74, 80], Motion for Change of Venue [Doc. 63], Motion for Appointment of Counsel [Doc. 64], and Motion to Compel Discovery[1] [Doc. 73].

The pro se incarcerated Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983, addressing incidents that allegedly occurred during a January 20, 2018 traffic stop involving the Plaintiff and his passenger, Marcus Hyatt.[2] The Complaint passed initial review on the Plaintiff's claims

---

[1] Titled "Motion for an Order Compelling Discovery and Response in Opposition to Defendant's Opposition to Defendant's Motion to Stay Litigation."

[2] Hyatt and his girlfriend, Ashley Barrett, who was detained in a separate vehicle stop, also filed an action in this Court, Hyatt v. Miller, Case No. 1:19-cv-00250-MR-WCM.

against Defendants J.D. Lambert, Jeff May, and Katherine Lewis, who are all Buncombe County Sheriff's Office (BCSO) deputies, for the traffic stop and Plaintiff's subsequent detention; false arrest and false imprisonment; the search of the vehicle and of Plaintiff's personal property; and against Lambert, May, Lewis, and Officer Steven Hendricks for the Plaintiff's body cavity search pursuant to an allegedly defective warrant. [Docs. 1, 13]. The Court exercised supplemental jurisdiction over the Plaintiff's North Carolina claims of false arrest, false imprisonment, assault and battery, and trespass to chattel, and for recovery on BCSO's surety bond against Western Surety Company. [Doc. 13].

Defendant Hendricks filed a Motion to Dismiss for failure to state a claim, which motion was granted after the Plaintiff was provided the opportunity to respond. [Doc. 34; see Docs. 25, 26, 30, 32]. The Plaintiff filed a Motion to Alter or Amend the Order granting Defendant Hendricks' Motion to Dismiss, and the Plaintiff's Motion was denied. [Doc. 36, 50]. An appeal of that Order is presently pending, Fourth Cir. Case No. 22-6891.

The Court also related the present action to the Hyatt case at the Plaintiff's request, and stayed this matter until Hyatt is resolved. [Doc. 50]. Although the Court has entered a judgment in Hyatt, the Defendants in that matter are now litigating post-trial motions that involve issues of law and fact

that are common to the instant case and must be resolved before the litigation in this case resumes.  [See Doc. 61 (Status Report)].

Presently pending are several Letters and Motions filed by the Plaintiff that will be addressed in turn.

### A.    Letters

The Plaintiff has sent several Letters to the Clerk requesting photocopies of docket entries in various cases.  [See Docs. 66, 68, 70].  The Court will construe these letters as Motions for Copies, which are denied.  These Motions do not include case captions, are directed to the Clerk of Court, and two of them refer to multiple cases.  [See id.].  The Plaintiff also fails to include payment for the copies he requests.

A litigant is ordinarily required to pay his own litigation expenses, even if he is indigent.  See United States v. MacCollom, 426 U.S. 317, 321 (1976) ("The established rule is that the expenditure of public funds is proper only when authorized by Congress….").  The Court, therefore, declines to provide the Plaintiff with a free copy of docket entries in this case and will deny these Motions.  The Court is not a copying service.  The Plaintiff may pay for the copies he seeks at the standard rate of $.50 per page.  See

3

https://www.ncwd.uscourts.gov/court-fees.[3]    The Court will, however, instruct the Clerk to provide the Plaintiff with a copy of the current docket sheet as a courtesy.

Also before the Court is a Letter that the Plaintiff directed to Judge Frank D. Whitney[4] in which the Plaintiff asks him "to monitor" the instant case. [Doc. 67]. The Plaintiff also states that he intends to file a motion in the instant case that will give the undersigned "the power [needed] to right something that was truely [sic] wrong." [Id.]. The Plaintiff then states, "i'll make a deal with you by agreeing not to even file this 'mysterious motion' in case 1:13-cv-277-FDW if I don't prove all my claims in case 1:21-cv-30-MR." [Id. at 2]. He continues, "[u]ntil then, between me and you, just keep your eye on case 1:21-cv-30-MR because if I calculated this right then things are about to get very interesting very quick!" [Id.]. Judge Whitney found the Letter to be "wholly improper" and struck it from the record in Case No. 1:13-cv-277. [1:13-cv-277, Doc. 49 at 4]. It will be stricken from the record in the instant case for the same reasons. [See id.].

---

[3] The Clerk mailed the Plaintiff a Letter on September 22, 2022 setting forth the fee for each of his photocopy requests.

[4] Judge Whitney presided over a habeas corpus action previously brought by Plaintiff pursuant to 28 U.S.C. § 2254 in Case No. 1:13-cv-277-FDW, regarding a 2012 state court conviction.

The Plaintiff is cautioned that the Court will not respond to any further letters or other miscellaneous filings in this case; only motions will be ruled on by the Court. The Plaintiff is also advised that the Court will not docket any future filings that include or relate to more than one case. Moreover, future improper filings may be stricken from the record in this matter and/or subject the Plaintiff to other sanctions.

## B.    Motions

### 1.    Relief from Judgment

The Plaintiff has filed four Motions seeking relief from judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. [Docs. 62, 69, 74, 80]. He also seeks Rule 11 sanctions against one of the Defendants' lawyers[5] for allegedly conducting an inadequate investigation, and for allegedly allowing a Defendant to perjure himself in the Hyatt case. [Doc. 80 at 5-9].

A party seeking Rule 11 sanctions must serve the Rule 11 motion on the opposing party at least 21 days before filing the motion with the district court. Fed. R. Civ. P. 11(c)(2). Further, a Rule 11 motion for sanctions "must be made separately from any other motion…." Id. These obligations are

---

[5] The Plaintiff asserts this allegation against Adam Peoples, who is also a defense lawyer in the instant case.

"mandatory" such that "failure to comply with the procedural requirements precludes the imposition of the requested sanctions." <u>Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.</u>, 369 F.3d 385, 389 (4th Cir. 2004). The Plaintiff has inserted his request for Rule 11 relief in another Motion, and it appears that he has failed to serve his Motion before filing it with the Court. The request for Rule 11 sanctions is, therefore, denied.

Three of the Motions seeking Rule 60(b) relief address Orders entered in the <u>Hyatt</u> case, 1:19-cv-250-MR.  [Docs. 69, 74, 80].  Although the Court stayed the instant action pending the outcome of <u>Hyatt</u> due to the two cases' factual similarities, the Court did not consolidate the instant case with <u>Hyatt</u>. [<u>See</u> Doc. 50].  Assuming *arguendo* that the Plaintiff has standing to challenge Orders entered in <u>Hyatt</u>, he would have to do so in the <u>Hyatt</u> case rather than in the present action.[6]  Therefore the Motions seeking Rule 60(b) relief in the <u>Hyatt</u> case are denied.

The Plaintiff also seeks Rule 60(b) relief from the Order granting Defendant Hendricks' Motion to Dismiss in the instant case.  [Doc. 62; <u>see</u> Doc. 34].  He argues that the Court erred in granting the Motion to Dismiss

---

[6] The Court makes no determinations about the procedural viability or potential merit of such a motion.

by misapplying Rule 9(b)[7] and requiring the Plaintiff to plead Defendant Hendricks' knowledge with particularity.  [Doc. 62; Cf. Doc. 34 at 6 (Order granting Defendant Hendricks' Motion to Dismiss because the allegations were conclusory and speculative); Doc. 50 at 5 (Order denying reconsideration of the Order granting the Motion to Dismiss because the allegations against Defendant Hendricks were conclusory and speculative)]. The Order granting the Motion to Dismiss is not final and, accordingly, Rule 60(b) does not apply.  See generally Fayetteville Investors v. Comm'l Builders, Inc., 936 F.2d 1462 (4th Cir. 1991) (Rule 60(b) does not apply to interlocutory orders).  Accordingly, the Rule 60(b) Motion seeking relief in the instant case is denied.  See generally Fobian v. Storage Tech. Corp., 164 F.3d 887, 890 (4th Cir. 1999) (if a Rule 60(b) motion is frivolous, a district court can promptly deny it without disturbing appellate jurisdiction over the underlying judgment).

### 2.    Change of Venue

In his verified Motion for Change of Venue, the Plaintiff asks the Court to transfer this case from the Court's Asheville Division to its Charlotte Division because: the Defendants are "highly visible figures of authority in

---

[7] Fed. R. Civ. P. 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

7

courtrooms located in both Asheville … and Buncombe County" [Doc. 63 at 4]; "[u]pon information and belief" many law enforcement officers from the BCSO and Asheville Police Department, some of whom are friends with the Defendants, now work in the federal judicial system and "may have the potential to influence the outcome of the case in favor of the Defendants" [id. at 7-8]; the Plaintiff and Marcus Hyatt have been the subject of "many Asheville Citizens Times articles due to Hyatt v. Miller" [id. at 4]; the Court has made erroneous rulings in this case and has treated this case and the Hyatt case differently although both cases address the same incident [id. at 3-4, 6]; the undersigned and the Court allegedly "are making attempts to use [Plaintiff's] incarceration, lack of resources, lack of funds, and pro se status against [him] to help Defendants circumvent prosecution" [id. at 5-6]; and the Plaintiff lacks the funds and resources to continue the litigation [id. at 6].

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Generally, when deciding a venue transfer request, a district court should consider "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) conveniences of the parties; and (4) the interest of justice." Trs.

of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Svcs., Inc., 791 F.3d 436, 444 (4th Cir. 2015); see also Datasouth Computer Corp. v. Three Dimensional Tech., Inc., 719 F.Supp. 446, 450–51 (W.D.N.C. 1989) (articulating multi-factor test).

Here, the Plaintiff originally filed suit in this Court; the witnesses all appear to be located in Asheville; defense counsel are located here; and the Plaintiff is incarcerated at the Alexander CI, which is not appreciably closer to Charlotte than Asheville.[8]  Further, the Plaintiff has failed to demonstrate that a transfer is warranted in the interest of justice.  His concerns about publicity, the Defendants' presence in the community, and the possibility that former Buncombe County and Asheville law enforcement officers may now work for the federal government, are vague, conclusory, and speculative and, in any event, any such concerns would be easily cured by a thorough voir dire of jurors, should the case proceed to trial.  See generally In re Charlotte Observer, 882 F.2d 850, 855 (4th Cir. 1989) (a thorough voir dire of jurors is "the preferred safeguard against" the threat of an unfair trial); United States v. Bakker, 925 F.2d 728, 732 (4th Cir. 1991) (a change of venue before jury selection should only be granted in extreme circumstances where

---

[8] In any event, if this case were to proceed to trial, NCDPS would provide transportation to whichever courthouse at which the trial was held.

the publicity is "so inherently prejudicial that trial proceedings must be presumed to be tainted"). To the extent that the Plaintiff complains that he is having difficulty litigating this case because of his financial situation is irrelevant, because his financial means would be unaffected by a change of venue. See Section A, *supra.*

It appears that the Plaintiff is also seeking a change of venue because of adverse rulings and perceived unfairness by the Court; however, this essentially seeks the recusal of the undersigned.[9] Judicial recusals are governed by a framework of interlocking statutes. Under 28 U.S.C. § 455(a), all "judge[s] of the United States" have a general duty to "disqualify [themselves] in any proceeding in which [their] impartiality might reasonably be questioned." In turn, 28 U.S.C. § 455(b) offers a list of other situations requiring recusal, one of which is where a judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). The bias or prejudice must "result in an opinion on the merits [of a case] on some basis other than what the judge learned from his participation in the case." Liteky v. United States, 510 U.S. 540, 545 n. 1 (1994) (quoting United States v.

---

[9] Transfer of this action to a different division would not result in the assignment of a different judge to the case. The undersigned presides over cases in all three divisions.

Grinnell Corp., 384 U.S. 563, 583 (1966)).  Section 144 of Title 28 of the United States Code requires recusal "whenever a party to any proceeding in a district court makes a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party...."  28 U.S.C. § 144.  The affidavit must state with particularity "the facts and the reasons for the belief that bias or prejudice exists...."  Id.  If the affidavit is legally sufficient, the court must recuse itself.  Sine v. Local No. 992 Int'l Bhd. of Teamsters, 882 F.2d 913, 914 (4th Cir. 1989).  However, "[a]ssertions merely of a conclusionary nature are not enough, nor are opinions and rumors."  United States v. Farkas, 669 F. App'x 122, 123 (4th Cir. 2016) (per curiam) (quoting United States v. Haldeman, 559 F.2d 31, 34 (D.C. Cir. 1976)).

The Plaintiff has failed to set forth any cognizable basis for the Court's recusal.  Although the Motion is verified, the Plaintiff relies on unsubstantiated claims of partiality including: his disagreement with the Court's rulings and case management, and misunderstanding of the law governing the Court's decisions.  The Court's prior adverse judicial rulings, its case management decisions, and the Plaintiff's conclusory, unsworn claims of partiality do not provide a basis for recusal.  See generally Liteky, 510 U.S. at 555 ("judicial rulings alone almost never constitute a valid basis

11

for a bias or partiality motion."); <u>United States v. Cherry</u>, 330 F.3d 658, 665 (4th Cir. 2003) ("a presiding judge is not ... required to recuse himself simply because of 'unsupported, irrational or highly tenuous speculation' ") (quoting <u>United States v. DeTemple</u>, 162 F.3d 279, 287 (4th Cir. 1998)). Therefore, to the extent that the Plaintiff seeks the Court's recusal, such is denied.

For the foregoing reasons, the Plaintiff's Motion for Change of Venue is denied.

### 3. Appointment of Counsel

Finally, the Plaintiff asks the Court to appoint the attorneys who are representing the plaintiffs in the <u>Hyatt</u> case to represent him in this action. [Doc. 64]. For grounds, he argues that he is unable to afford counsel; that the Court dismissed his IFP Application; that his imprisonment has greatly limited his ability to litigate; that the issues involved are complex and will require significant research and investigation; that he has no access to law library and NCPLS does not provide prisoners with legal research or paralegal services; that he has limited access to supplies such as writing paper; that expert testimony will be needed to address his mental health conditions for this case; that a trial will likely involve conflicting testimony and counsel would be better able to present evidence and cross-examine witnesses; that this case is related to <u>Hyatt</u>, and will require Marcus Hyatt's

12

testimony, involves much of the same discovery, and the attorneys in that case are very familiar with the case; that the Plaintiff has limited knowledge of the law; that the Court failed to provide the Plaintiff with the opportunity to request the appointment of North Carolina Prisoner Legal Services (NCPLS) to assist him with discovery; and that NCPLS denied the Plaintiff's request for assistance.[10]

There is no absolute right to the appointment of counsel in civil actions such as this one. Therefore, a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel. Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). The Plaintiff has failed to demonstrate the existence of exceptional circumstances that would warrant the appointment of counsel. Accordingly, his request for the appointment of counsel is denied.

---

[10] The Standing Order in Misc. Case No. 3:19-mc-60-FDW that reflects the Court's agreement with NCPLS to provide representation in certain *pro se* prisoner actions for the limited purpose of discovery assistance. The Standing Order "applies only to civil rights actions filed by North Carolina state prisoner against current and former employees of the North Carolina Department of Safety, Division of Adult Correction ("DPS")." [3:19-mc-60, Doc. 1 at 1]. None of the Defendants in the instant case are DPS employees and, accordingly, the Standing Order does not apply to this case. Thus, to the extent that the Plaintiff suggests that the Court should appoint NCPLS to assist him with discovery pursuant to the Standing Order, this request is denied.

**IT IS, THEREFORE, ORDERED** that:

1.  The Plaintiff's Letters [Docs. 52, 66, 68, 70] are construed as Motions and are **DENIED.**

2.  Plaintiff's Letter [Doc. 67] is **STRICKEN** from the record in this matter.

3.  Plaintiff's Motions [Docs. 62, 63, 64, 69, 73, 74, 80] are **DENIED**.

4.  **IT IS FURTHER ORDERED** that any documents Petitioner files in this matter referencing multiple case numbers will be **DOCKETED** "Court Only" for record-keeping purposes and the original document shall be returned to Petitioner.  The Plaintiff is cautioned that future improper filings may be stricken from the record in this matter and/or subject the Plaintiff to other sanctions.

The Clerk is respectfully instructed to send Plaintiff a copy of this Order, and a copy of the docket sheet in this matter as a courtesy.

**IT IS SO ORDERED**.

Signed: November 11, 2022

Martin Reidinger
Chief United States District Judge

14