IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:21-cv-00030-MR

| | |
|---|---|
| BRANDON PICKENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| STEVEN HENDRICKS, et al., ) | **ORDER** |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's pro se Motion for Change of Venue [Doc. 85], Motion to Certify Order in Multiple Claim Case [Doc. 87], Motion for Consolidation of Actions [Doc. 89], and Motion for Sanctions [Doc. 92]; and on the Defendants Quentin Miller and Western Surety Company's Motion to Substitute Attorney [Doc. 90].

**I.  BACKGROUND**

The pro se incarcerated Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983, addressing incidents that allegedly occurred during a January 20, 2018 traffic stop involving the Plaintiff and his passenger, Marcus Hyatt.[1]  The Complaint passed initial review on the Plaintiff's claims

---

[1] Hyatt and his girlfriend, Ashely Barrett, who was detained in a separate vehicle stop, also filed an action in this Court, Hyatt v. Miller, Case No. 1:19-cv-00250-MR-WCM.

against Defendants J.D. Lambert, Jeff May, and Katherine Lewis, who are all Buncombe County Sheriff's Office (BCSO) deputies, for the traffic stop and Plaintiff's subsequent detention; false arrest and false imprisonment; the search of the vehicle and of Plaintiff's personal property; and against Lambert, May, Lewis, and Officer Steven Hendricks for the Plaintiff's body cavity search pursuant to an allegedly defective warrant. [Docs. 1, 13]. The Court exercised supplemental jurisdiction over several claims under North Carolina law. [Doc. 13].

On November 18, 2021 Defendant Hendricks filed a Motion to Dismiss for failure to state a claim that was granted on April 25, 2022, after the Plaintiff was provided the opportunity to respond. [See Docs. 24, 25, 26]. The Plaintiff filed a Motion to Alter or Amend the Order granting Defendant Hendricks' Motion to Dismiss, which was denied on July 11, 2022. [Docs. 36, 50]. An appeal is presently pending, Fourth Cir. Case No. 22-6891.

The Court also related the present action to the Hyatt case at the Plaintiff's request, and stayed this matter until Hyatt is resolved.[2] [Doc. 50]. Although the Court has entered a judgment in Hyatt, the Defendants in that matter are now litigating post-trial motions that involve issues of law and fact

---

[2] A jury reached a partial verdict at a trial in March 2021, and the Court resolved the issues on which the jury was deadlocked in August 2022. See Hyatt v. Miller, 2022 WL 3130108 (W.D.N.C. Aug. 3, 2022).

2

that are common to the instant case and must be resolved before the litigation in this case resumes. [See Doc. 61 (Status Report)].

On November 14, 2022, the Court entered an Order that *inter alia* denied the Plaintiff's Motions seeking: relief from the Order granting Defendant Hendricks' Motion to Dismiss; the imposition of sanctions on defense counsel; a change venue from this Court's Asheville Division to its Charlotte Division; and the recusal of the undersigned. [Doc. 82].

Several new motions are now pending; they will be addressed in turn.

## II. DISCUSSION

### A. Change of Venue

The Plaintiff again seeks this case's transfer to the Court's Charlotte Division. [Docs. 85, 86].[3] He repeats many of his previous arguments and they warrant no further discussion, as they were addressed in the Court's November 14 Order. [See Doc. 82]. The Court will briefly address the Plaintiff's contentions that he presently lives in the Charlotte Division and plans to live in Charlotte; that the undersigned lied in the November 14 Order and falsely claimed that the Plaintiff filed the lawsuit in Asheville; and that

---

[3] The Plaintiff filed an "Addendum," which is liberally construed as a Memorandum in support of the Motion for Change of Venue. The Plaintiff is cautioned that piecemeal filings will not be accepted in future and may be disregarded or stricken.

3

maintaining the action in Asheville will shift the burden of litigation on the Plaintiff, thus providing the Defendants with an advantage.

The Plaintiff filed this action addressing incidents that allegedly occurred in Buncombe County, against the Buncombe County sheriff, law enforcement officers located in Buncombe County, and the sheriff's surety; further, an attachment to the Complaint refers to the Court's Asheville Division. [See Doc. 1 at 2-3; Doc. 1-1 at 1 (referring to the Court's Asheville Division)]. The Clerk opened the case in the Asheville Division on February 3, 2021 in accordance with ordinary Court procedures. See, e.g., United States District Court Western District of North Carolina Pro Se Litigant Guide § I(A) ("If the defendant(s) reside in, or if the action on which the lawsuit is based occurred in one of the following counties, it is an Asheville Division Case: … Buncombe…."). That the Plaintiff mailed the Complaint to the Charlotte Division's Clerk's Office is irrelevant. See LCvR 5.2.1(a) ("Where conventional filing is permitted by the Administrative Procedures or by the assigned judge, all papers may be filed in Asheville, Charlotte, or Statesville, regardless of the division in which the case is pending."). The Plaintiff appeared to acknowledge that the case should be assigned to the Asheville

Division.[4]  He did not object to the divisional assignment until more than a year and seven months later on September 4, 2022, when he sought a change of venue due to the undersigned's alleged bias. [Doc. 72]. The Plaintiff's prior arguments regarding venue and recusal were denied, and his present expressions of disagreement are unavailing for the same reasons. [See Doc. 82]. The Plaintiff's speculative and conclusory claims that the divisional assignment has shifted the burden of the litigation to him and has provided the Defendants with an advantage are rejected. The Plaintiff's present claims that he now lives in the Charlotte Division, and that he plans to live in Charlotte when he completes his sentence, are beside the point. As the Court previously noted, NCDPS would be responsible for transporting him to the relevant courthouse should the case proceed to trial while he is incarcerated. The Plaintiff's hypothetical safety concerns if he should be housed at the Buncombe County Detention Facility during a prospective trial at the Asheville Courthouse, or his supposed plans to live in Charlotte following his release from prison in the future, are speculative and, as previously discussed, could be addressed without a change of division.[5]

---

[4] [See, e.g., Doc. 1-1 at 1; Doc. 5 at 1 (Plaintiff's Prisoner Administrative Remedy Statement stating that "[t]his cause of action arose at Asheville, NC….")].

[5] The Plaintiff is currently projected to be released from NCDPS on May 9, 2025. https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=076538

5

[See Doc. 82]. The Plaintiff's Motion seeking a change of venue is, therefore, again denied.[6] [Id.].

## B. Motion to Certify Order in Multiple Claim Case

The Plaintiff asks the Court to certify the Orders granting Defendant Hendricks' Motion to Dismiss and denying Plaintiff's Motion to Alter or Amend, pursuant to Rule 54(b). [Doc. 87]. He argues that Defendant Hendricks' status as a party will have a major impact on discovery; that Hendricks knew or should have known the falsity of certain statements in the warrant application; and that the evidence proves Hendricks' liability. Defendant Hendricks filed a Response [Doc. 93], and the Plaintiff has filed a Reply [Doc. 95].

Rule 54(b) permits a district court to enter final judgment as to one or more, but fewer than all claims in a multiclaim action, thus allowing an appeal on fewer than all claims in a multiclaim action. Braswell Shipyards, Inc., 2 F.3d 1331, 1335 (4th Cir. 1993). The chief purpose of Rule 54(b) certification is to prevent piecemeal appeals when multiple claims are resolved in the course of a single lawsuit. Id.

---

9&searchLastName=pickens&searchFirstName=brandon&searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1 (last accessed Jan 10, 2023); Fed. R. Ev. 201.

[6] To the extent that the Plaintiff again seeks the Court's recusal, it too is denied for the reasons previously discussed. [Doc. 82].

As a preliminary matter, Defendant Hendricks argues that the Motion should be denied as untimely because the Plaintiff filed it after having initiated his appeal in the Fourth Circuit, and because it is severely tardy.[7] The Fourth Circuit has held that, absent prejudice to appellee, a district court may enter a 54(b) judgment after notice of appeal has been filed. Harrison v. Edison Bros. Apparel Stores, Inc., 924 F.2d 530, 532 (4th Cir. 1991). Accordingly, the Defendant's argument that the Motion should be denied simply because he filed his Notice of Appeal first, is rejected.

In determining whether to grant a Rule 54(b) certification, the district court must determine: whether the judgment is final, that is, whether it constitutes "an ultimate disposition of an individual claim entered in the course of a multiple claims action;" and whether there is no just reason for the delay in the entry of judgment. Braswell, 2 F.3d at 1335. However, "[a]s a general proposition, the timely filing of a notice of appeal confers jurisdiction in the court of appeals 'and divests the district court of its control over those aspects of the case involved in the appeal.'" Dixon v. Edwards,

---

[7] The Plaintiff filed the Notice of Appeal and the instant Motion to Certify on July 19, 2022 and November 18, 2022, respectively. See Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Lewis v. Richmond City Police Dep't, 947 F.2d 733 (4th Cir. 1991) (applying prisoner mailbox rule to § 1983 case).

7

290 F.3d 699, 709 n. 14 (4th Cir. 2002) (quoting Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982)).

Any analysis of the Rule 54(b) factors would necessarily overlap the issues that the Fourth Circuit is presently considering on appeal. Therefore, the Court will defer ruling on the Rule 54(b) Motion until the Fourth Circuit resolves the pending appeal, or grants a limited remand. See, e.g., Quach v. Cross, 216 F. App'x 666 (9th Cir. 2007) (granting a limited remand for the district court to consider whether a decision should be certified as an appealable final judgment under Rule 54(b), after finding that neither party would be prejudiced); N.W. Cole & Co. Ltd. v. Sage Sys., Inc., 823 F.2d 548 (4th Cir. 1987) (dismissing an appeal after the district court declined to certify its judgment as final on limited remand).

### C. Motion to Consolidate

The Plaintiff asks the Court to consolidate the instant case with Hyatt pursuant to Rule 42(a). [Doc. 89].

Rule 42(a) provides that: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Proper application of Rule 42(a) requires the district court to determine "whether the specific risks of

prejudice and possible confusion" from consolidation "were overborne by the risk of inconsistent adjudications ..., the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives." Campbell v. Bos. Sci. Corp., 882 F.3d 70, 74 (4th Cir. 2018) (quoting Arnold v. Eastern Air Lines, Inc., 681 F.2d 186, 193 (4th Cir. 1982)). The consolidation of actions is ordinarily within the discretion of the trial court. Mutual Life Ins. Co. v. Hillmon, 145 U.S. 285, 292 (1892). A motion to consolidate "must always be timely," and "must ordinarily be made before the trial of either one is commenced." Shooters Island Shipyard Co. v. Std. Shipbuilding Corp., 4 F.2d 101 (3d Cir. 1925). Extreme untimeliness, by itself, supports the denial of a motion to consolidate. Cheyenne-Arapaho Tribes of Indians of Oklahoma v. United States, 671 F.2d 1305, 1312 (Ct. Cl. 1982).

The Plaintiff's Motion to Consolidate is extremely untimely. The Hyatt case was tried before a jury in March 2021, and the Court resolved the issues on which the jury was deadlocked in August 2022. See Hyatt, 2022 WL 3130108. Consolidating the actions at this juncture would not serve any productive purpose and, accordingly, the Motion to Consolidate is denied.

## D. Motion for Sanctions

The Plaintiff asks the Court to sanction Defendant Hendricks' counsel[8] based on arguments contained in Hendricks' Motion to Dismiss. [Doc. 92].

The party seeking Rule 11 sanctions must serve the motion on the opposing party at least twenty-one days before filing the motion with the district court, and sanctions may be sought only if the challenged pleading is not withdrawn or corrected within twenty-one days after service of the motion. Fed. R. Civ. P. 11(c)(1)(A). Compliance with the "21-day safe harbor" rule is a condition precedent to the imposition of sanctions. Brickwood Contractors, Inc. v. Datanet Eng., Inc., 369 F.3d 385, 393 (4th Cir. 2004). Thus, "Rule 11 Sanctions are not available when the moving party waits to serve the motion after the final disposition of the claim between the parties." Royal Ins. v. Lynnhaven Marine Boatel, Inc., 216 F.Supp.2d 562 (E.D. Va. 2002); see Fed. R. Civ. P. 11, Application Notes ("Given the 'safe harbor' provisions …, a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)").

The Plaintiff filed the present Motion for Sanctions pursuant to the prisoner mailbox rule on December 8, 2022, more than seven months after the Motion to Dismiss was granted. [Doc. 92 at 9]. The Plaintiff has thus

---

[8] The Plaintiff asserts this allegation against Eric Edgerton.

failed to comply with the Rule 11 safe harbor rule and the Motion for Sanctions is denied.

### E. Motion to Substitute Attorney

Finally, Defendants Miller and Western Surety Company have moved to substitute counsel with a new attorney, because counsel of record has changed employment. [Doc. 90]. The Motion is granted and these Defendants will be allowed to substitute Curtis W. Euler in place of J. Brandon Freeman.

## III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. The Plaintiff's Motion for Change of Venue [Doc. 85] is **DENIED.**

2. The Court **DEFERS RULING** on the Plaintiff's Motion to Certify Order in Multiple Claim Case [Doc. 87] until such time as the Fourth Circuit resolves the appeal in Case No. 22-6891, or grants a limited remand to this Court for consideration of the Motion.

3. The Plaintiff's Motion for Consolidation of Actions [Doc. 89] is **DENIED.**

4. The Plaintiff's Motion for Sanctions [Doc. 92] is **DENIED**.

5. Defendants Quentin Miller and Western Surety Company's Motion to Substitute Attorney [Doc. 90] is **GRANTED**.

**IT IS SO ORDERED**.

Signed: January 17, 2023

Martin Reidinger
Chief United States District Judge